IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PHILIP A. DIX, individually and behalf of all others similarly situated, | : : : : | HON. JEROME B. SIMANDLE |
| | : | Civil No. 10-3196 (JBS/JS) |
| Plaintiff, | : : | |
| v. | : : | **OPINION** |
| TOTAL PETROCHEMICALS USA, INC., PENSION PLAN, | : : : | |
| Defendants. | : : | |

APPEARANCES:

Lisa J. Rodriguez, Esq.
TRUJILLO RODRIGUEZ & RICHARDS, LLC
258 Kings Highway East
Haddonfield, NJ 08033
      Attorney for Plaintiff Philip A. Dix

Craig Stuart Friedman, Esq.
Karen Rosenfield, Esq.
JONES DAY
222 East 41st Street
New York, NY 10017
      Attorney for Defendant Total Petrochemicals USA, Inc.,
      Pension Plan


**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

     This matter is before the Court on a motion by Defendant Total Petrochemicals USA, Inc., Pension Plan ("Defendant" or "The Plan") for summary judgment.  [Docket Item 52.]  The instant putative class action arises out of the Plaintiff Philip A. Dix's ("Plaintiff") election and receipt of a lump sum payment of his

pension plan.  Mr. Dix argues that his lump sum payment did not include the present value of any cost of living adjustments he would have received had he elected payment in the form of a monthly annuity.  Consequently, after filing his administrative claim disputing this lump sum payment amount on December 7, 2009, Plaintiff brought this action, on behalf of himself and all others similarly situated, on June 23, 2010, against the Defendant pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e), arguing that the Plan violated ERISA and several Internal Revenue Service regulations by failing to include cost of living adjustments in his lump sum pension payment.  [Docket Item 1.]

The central issue presently before the court is whether Plaintiff's action was filed within the applicable statute of limitations period.  The parties dispute which statute of limitations applies to this action as well as the accrual date of Plaintiff's claim.

For the reasons discussed below, the court concludes that a six-year statute of limitations applies and Plaintiff's cause of action accrued, at the latest, on November 14, 2003, when the Plan informed Mr. Dix of the final calculation of the disputed lump sum payment.  His claim is time-barred because he did not file his administrative claim until December 7, 2009, outside the limitations period.  Accordingly, the court will grant the

Defendant's motion for summary judgment and dismiss Plaintiff's complaint.

## II.  BACKGROUND

Plaintiff Philip Dix filed this putative class action individually and on behalf of all others similarly situated. Plaintiff is a resident of New Jersey and began employment at Rohm & Haas Company ("Rohm & Haas") in 1967.  (Def.'s Statement of Facts ¶ 1.)  Plaintiff participated in the Rohm & Haas Pension Plan while he was employed with Rohm & Haas.  (Def.'s Statement of Facts ¶ 2.)  In 1994, Plaintiff received a Summary Plan Description ("SPD") from Rohm & Haas explaining his pension benefits.  (Pl.'s Resp. to Def.'s Statement of Material Facts at ¶ 41.)

Subsequently, Plaintiff was employed by Elf Atochem, N.A., Inc. ("Elf Atochem") and ATOFINA Chemicals, Inc. ("Atofina") after corporate transactions and name changes.  (Def.'s Statement of Facts ¶ 3.)  Because Plaintiff's employer changed due to these corporate transactions, initially the Elf Atochem, N.A. Retirement Benefits Plan, later renamed ATOFINA Chemicals, Inc. Retirement Benefit Plan ("Atofina Plan"), and subsequently renamed the Arkema Inc., Retirement Benefits Plan, and ultimately the Total Petrochemicals USA, Inc. Pension Plan ("The Plan" or "Defendant") assumed the obligations of the Rohm & Haas Pension

Plan as to Plaintiff and other participants.  (Statement of Facts ¶ 4.)

On January 1, 2004, Plaintiff terminated his employment with Atofina by retiring under a special Early Retirement Incentive Program.  (Statement of Facts ¶ 5, ¶ 8.)  When Plaintiff retired, he was age 57 and 8 months.  (Statement of Facts ¶ 6.)  Under the Atofina Plan, "normal retirement date" was defined as "the first day of the month following the month in which the Employee attains age 65, or the date on which the Employee attains age 65 if such date is the first day of any calendar month."  (Pl.'s Resp. to Def.'s Statement of Material Facts at ¶ 7; Def.'s Ex. 1, Atofina Chemicals, Inc. Retirement Benefits Plan at 4.)  As part of the Early Retirement Incentive Program, the Plaintiff was permitted to retire early and take a pension and in addition, Plaintiff received an enhanced pension benefit that added 5 years to his age and/or years of credited service as well as additional supplements.  (Rudd Decl., Ex. 2; Def.'s Statement of Material Facts ¶ 9.)

At the time Plaintiff terminated his employment, he was eligible for a pension benefit from the Atofina Plan, a portion of which was attributable to his prior employment at Rohm & Haas, and a portion of which was attributable to his later employment at Atofina.  (Rudd. Dec. Ex. 2; Def.'s Statement of Material Facts ¶ 10.)  Plaintiff had several options of how he could

receive his Rohm & Haas pension benefit under the Atofina Plan, including different types of annuities or a lump sum payment. (Pl.'s Resp. to Def.'s Statement of Material Facts, ¶ 11.)

In a letter dated November 10, 2003, Plaintiff was informed by Defendant that his total lump sum payment was $505,495.00 with a payment date of January 1, 2004. (Pl.'s Ex. I.)  This letter discussed the different payment options Plaintiff could elect to receive his Rohm and Haas pension, including annuities and a lump sum distribution.  This letter also enclosed all the forms necessary for Plaintiff to elect his payment option, including a spousal consent form if he should elect a lump sum distribution. Id.

Plaintiff elected to receive his Rohm & Haas pension in the form of a lump sum payment, specifically, "a single payment of the actuarial equivalent present value of the benefit that [plaintiff] would otherwise be entitled to receive in the form of monthly annuity payments." (Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 16.)  In order to receive his pension in the form of a single lump sum payment, Plaintiff and his wife were required to sign a consent form.  The consent form stated:

> I, Philip A. Dix (Participant), hereby consent, pursuant to Article IV of the ATOFINA Chemicals, Inc. Retirement Benefits Plan (the "Plan") to the Plan's distribution to me in a single payment of the actuarial equivalent present value of the benefit that I would otherwise be entitled to receive in the form of monthly annuity payments.  I understand that by choosing my benefit in the form of a single payment, the Plan will be fully

discharged of its obligations to me and to my spouse, and I (we) will have no right or entitlement to any future benefits from the Plan.

(Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 18; Pikofsky Dec. Ex. 5.)  This consent form was executed by both Plaintiff and his wife before a notary public on November 14, 2003.

By November 24, 2003, Plaintiff received a Statement of Estimated Benefits that indicated his single lump sum payment from the Atofina Plan was estimated to be $505,494.67.  (Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 17; Rudd Dec. Ex. 2.)  This Statement of Estimated Benefits dated November 7, 2003, included a table explaining the "RandH accrued benefit" (Rohm and Haas Pension Plan) which specifically illustrated Plaintiff's various payment options for receiving his accrued benefit through different annuities or a lump sum.  (Rudd Dec. Ex. 2.) Underneath this table, the following paragraph, with bolded language in the original, appears:

> The portion of your pension benefit attributable to your RandH accrued benefit will be increased as of each March 31st subsequent to the later of your retirement or attainment of age 60.  The amount of such increase will be the lesser of 3% or the increase in the CPI.  **You will not be entitled to this cost-of-living adjustment if you elect (with your spouse's written consent) to receive your RandH accrued benefit in the form of a lump sum.**

Id.  In addition to this Statement of Estimated Benefits, Plaintiff was provided with several prior statements of estimated benefits from July 31, 2001 through October 23, 2003, all of which included the above paragraph and bolded language.  (Pl.'s

Resp. to Def.'s Statement of Material Facts ¶ 17; Pikofsky Decl. Exs. 1-4.)

On November 24, 2003, Plaintiff and his wife signed a Retirement Benefits Request Form pursuant to the Early Retirement Incentive Program. (Rudd Decl. Ex. 2.)  This signed form indicated Plaintiff elected to receive his Rohm & Haas benefit as a lump sum payment totaling $505,495.00.  (Rudd Decl. Ex. 2.)  This application was approved on December 17, 2003.  (Rudd Decl. Ex. 2.)

The Atofina Plan sent a check for $505,495.00 to Prudential/Wexford Clearing Services ("Prudential") for deposit in Plaintiff's IRA account on January 2, 2004.  (Pl.'s Ex. C.)  Prudential received this check on January 12, 2004, after which it was credited to Plaintiff's IRA account.  (Pl.'s Ex. C.)

Six years later, on December 7, 2009, Plaintiff filed an administrative claim with the Defendant complaining that his lump sum payment did not include the value of a cost-of-living adjustment ("COLA").  (Rudd. Decl. Ex. 2.)  Specifically, Plaintiff made a "formal claim under the Total Petrochemicals USA, Inc., Pension Plan for miscalculation of his pension benefits."  (Id. at 1.)  Plaintiff argued that the "lump sum distribution the Atofina Plan paid Mr. Dix did not include the value of the COLA. . . . By failing to include the value of the COLA in Mr. Dix's lump sum distribution, the Plan failed to pay

the present value of his normal retirement benefit, because the
lump sum did not reflect the true value of the COLA-enhanced
annuity he would otherwise have received at normal retirement
age."  (Rudd Ex. 2 at 3-4.)

The Defendant denied Plaintiff's administrative claim on
April 5, 2010. (Pl.'s Resp. to Defendant's Statement of Material
Facts ¶ 33; Rudd. Decl. Ex. 3.)  On May 27, 2010, after
corresponding with the Plan, Plaintiff filed an internal
administrative appeal of the denial of his claim.  (Pl.'s Resp.
to Defendant's Statement of Material Facts ¶ 36; Rudd. Decl. Ex.
6.)  On June 18, 2010, the Plan denied Plaintiff's appeal.
(Pl.'s Resp. to Defendant's Statement of Material Facts ¶ 38;
Rudd. Decl. Ex. 7.)  Plaintiff received this denial on June 21,
2010.  (Pl.'s Ex. F.)

Plaintiff then filed the instant lawsuit on June 23, 2010,
on behalf of himself and all others similarly situated.  [Docket
Item 1.]  In response, Defendant filed a motion to dismiss based
on statute of limitations grounds.  [Docket Item 11.]  The court
denied this motion because it incorporated documents outside the
complaint and was procedurally improper.  [Docket Item 19.]
However, this denial was without prejudice to the Defendant re-
filing the motion as a motion for summary judgment.  [Docket
Items 19 and 20.]  The parties then completed limited discovery
on the statute of limitations issue.  [Docket Item 23.]  The

Defendant then filed the instant motion for summary judgment arguing the complaint is untimely and barred by the statute of limitations.  [Docket Item 52.]

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

### B. Analysis

#### 1. Applicable Statute of Limitations

The issue of the statute of limitations applicable to this action first arose on Defendant's motion to dismiss.  In arguing this motion, both parties agreed that the longest applicable statute of limitations was six years.  [Docket Item 19 at 1.]

In the instant motion, the Defendant maintains that Plaintiff's claim is a claim for benefits under ERISA § 502(a)(1)(B).  Therefore, since ERISA does not provide a specific statute of limitations for non-fiduciary claims, the court borrows the most analogous state statute of limitations from the forum and Defendants note that courts in this district have adopted New Jersey's 6-year statute of limitations for breach of contract suits.

The Plaintiff, in opposition, does not address whether New Jersey or Pennsylvania's statute of limitations should apply to his claim.  The Plaintiff does not dispute that his one count complaint is a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B), and is therefore a non-fiduciary claim.  Instead, Plaintiff argues that ERISA, specifically 29 U.S.C. § 1132(a)(1)(B), imposes no statute of limitations on his claim and consequently, "in keeping with trust law," no limitations period applies and his claim is therefore timely regardless of when he filed it. (Pl.'s Opp. at 9.)  In support of this argument, Plaintiff cites a Supreme Court case

from 1885,[1] which was clearly decided well before the adoption of ERISA and irrelevant to the instant analysis, and Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 305 (3d Cir. 2008). Hahnemann, however, does not support Plaintiff's argument.  In fact, the Hahnemann decision held that Pennsylvania's four year statute of limitations applied to a claim to recover unpaid benefits under ERISA and explained:

> Hahnemann claims that it is entitled to recover unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA. This section allows a plan participant or a beneficiary "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Id. ERISA does not include a specific statute of limitations for claims brought under this statutory provision. However, we have stated that, "[a]s a general rule, when Congress omits a statute of limitations for a federal cause of action, courts 'borrow' the local time limitation most analogous to the case at hand." Gluck v. Unisys Corp., 960 F.2d 1168, 1179 (3d Cir. 1992)(internal quotation marks and citations omitted). The statutory limitation most applicable to a claim for benefits under Section 1132(a)(1)(B) is a breach of contract claim. See id. at 1181.  In Pennsylvania, a breach of contract claim has a statute of limitations of four years. 42 Pa. Cons. Stat. Ann. § 5525(a)(8). The parties are allowed to contract for a shorter limitation period, so long as the contractual period is not manifestly unreasonable. See, e.g., Hosp. Support Servs., Ltd. v. Kemper Group, Inc., 889 F.2d 1311 (3d Cir. 1989).

Id. at 305.  Therefore, Plaintiff's argument that no statute of limitations applies to his claim, in addition to being

---

[1] Philippi v. Philippi, 115 U.S. 151, 156-57 (1885).

inconsistent with Plaintiff's previous filings with this court,[2] is without merit.

ERISA provides a statute of limitations for claims alleging a breach of fiduciary duty under ERISA § 404(a).  However, ERISA does not contain a statute of limitations for non-fiduciary claims, such as the one present in this case, alleging a miscalculation of benefits.  Romero v. Allstate Corp., 404 F.3d 212, 220 (3d Cir. 2005).  Moreover, since ERISA was enacted in 1974, it is not subject to 28 U.S.C. § 1658, which provides a default limitations period of four years for all claims arising under an act of Congress which were enacted after December 1, 1990.  Syed v. Hercules, Inc., 214 F.3d 155, 158 (3d Cir. 2000).  Therefore, federal courts apply the statute of limitations from "the forum state claim most analogous to the ERISA claim at hand" when analyzing the timeliness of non-fiduciary claims.  Romero, 404 F.3d at 220.[3]  New Jersey's six-year statute of limitations

---

[2] Plaintiff argued in his opposition brief to Defendant's motion to dismiss that "the Court first determines when plaintiff's claim accrued and then determines whether plaintiff filed his claim within the applicable six-year statute of limitation."  [Docket Item 16, Pl's Opp. to Def.'s Mot. to Dismiss, at 11.]

[3] A court may also apply a statute of limitations which is expressly set forth in the plan to analyze the timeliness of a claim for benefits so long as the plan's limitations period is reasonable.  Hahnemann, 514 F.3d at 306.  However, it is undisputed by the parties that the Plan in this case provides no express limitations period.  Therefore, the court must borrow the most analogous state law limitations period in analyzing the timeliness of Plaintiff's claim.

which governs contract claims is most analogous to this case and is applicable to Plaintiff's claim for ERISA benefits.  <u>See</u> <u>Kapp v. Trucking Employees of North Jersey Welfare Fund, Inc.</u>, 426 Fed. Appx. 126, 129 (3d Cir. 2011); <u>Sturgis v. Mattel</u>, 525 F. Supp. 2d 695 (D.N.J. 2007); N.J. Stat. Ann. § 2A:14-1.[4]

### 2. Accrual of Plaintiff's Cause of Action

The remaining issue before the court is to determine when Plaintiff's cause of action accrued.

### 1. Parties' Arguments

The Defendant argues Plaintiff's cause of action accrued at the latest on November 24, 2003, when Plaintiff signed his

---

[4] The Defendant argues in a footnote that Pennsylvania's statute of limitations should apply because the Atofina Plan which paid Plaintiff's benefit is administered in Pennsylvania. The Defendant cites to <u>Syed</u>, 214 F.3d at 160 and an unpublished District of New Jersey case, <u>Jackson v. Chevron Corp. Long Term Disability Org., Inc.</u>, 2006 WL 231595 (D.N.J. Jan. 30, 2006) in support of its argument.  In <u>Jackson</u>, the court discussed applying a federal choice of law analysis to determine which state's statute of limitations applied.  This analysis required the court to address several factors including the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract and the location of the parties.  <u>Jackson</u>, 2006 WL 231595 at *4.  The district court in <u>Jackson</u> could not engage in this analysis on deciding the pending motion to dismiss because the necessary documents were not properly before the court and the limitations bar was not apparent on the face of the complaint.  <u>Id.</u>

Here, the Defendant brings up this argument in the last footnote of its brief and does not address the relevant factors cited by the <u>Jackson</u> court which are necessary to resolve a choice of law dispute.  Because this issue was not fully briefed or properly addressed in the Defendant's moving papers, the court will not discuss whether Pennsylvania's statute of limitations should apply to this action.

Retirement Benefits Request Early Retirement Incentive Program form.  The Defendant argues that the information provided with the form left no doubt as to the lack of a cost of living adjustment ("COLA") when accepting a lump sum payment and clearly repudiated Plaintiff's claim.  Specifically, Plaintiff received a Statement of Benefits in November 2003 which was included with the early retirement request form which expressly stated:

> The portion of your pension benefit attributable to your RandH accrued benefit will be increased as of each March 31st subsequent to the later of your retirement or attainment of age 60.  The amount of such increase will be the lesser of 3% or the increase in the CPI.  **You will not be entitled to this cost-of-living adjustment if you elect (with your spouse's written consent) to receive your RandH accrued benefit in the form of a lump sum.**

(Rudd Dec. Ex. 2.)  Defendant argues this language clearly repudiated any claim Defendant might have made for a COLA payment if he elected to receive a lump sum distribution of his pension benefit.  This language was included on all of Plaintiff's explanation of benefits statements from 2001 to 2003, as noted above.

Defendant further argues that the November 14, 2003 consent form, signed by the Plaintiff and notarized, is not a contradictory document and reiterates that Plaintiff would not receive a COLA if he elected a lump sum distribution. Importantly, Defendant contends that the consent form expressly references and incorporates Article IV of the Atofina Plan.  This article of the Plan states "Appendices to the Plan contain

14

special rules regarding . . . benefits for Participants who were
employed by companies that were acquired by Atofina." (Rudd
Decl. Ex. 1 at 22.)  Appendix N of the Atofina Plan applies to
the Plaintiff as a former Rohm & Haas employee and expressly
states that the cost of living adjustments shall not apply if the
employee has elected to receive his pension benefit in the form a
of a single lump sum payment.  (Rudd Decl. Ex. 1 at N3.)
Consequently, the Defendants argue the consent form did not
contradict the previous language in the explanation of benefits
expressly stating that COLAs were not included in a lump sum
payment.

 In addition, Defendant attaches the 1994 Rohm and Haas SPD
in support of its argument that it was clear to the Plaintiff
that a lump sum pension payment did not include a COLA.  The
Defendant argues that the 1994 SPD further corroborates
Defendant's interpretation of the language in the 2001 to 2003
benefits statements and the November 2003 consent form which
Defendant maintains clearly repudiated Plaintiff's claim.

 Therefore, since Plaintiff's complaint was filed more than
six years after Plaintiff's claim accrued, Defendant argues
Plaintiff's complaint is barred by the statute of limitations.

 The Plaintiff, in contrast, argues that his claim did not
accrue until June 21, 2010, when he received Defendant's formal
denial of his administrative claim.  The Plaintiff relies on

15

Romero v. Allstate Corp., 404 F.3d at 222, to support his
argument.  Since the Plaintiff filed the complaint two days after
receiving Defendant's final denial of his administrative claim,
Plaintiff argues his claim is timely.

To the extent Defendant argues the Plan clearly repudiated
his claim that COLA payments should be included in his lump sum
pension, Plaintiff argues that the language of the explanation of
benefit statements from 2001 to 2003 was not clear.  In
particular, Plaintiff argues these statements include the
following language: "You will not be entitled to *this* cost-of-
living adjustment if you elect (with your spouse's written
consent) to receive your RandH accrued benefit in the form of a
lump sum."  (Rudd Dec. Ex. 2)(emphasis added).  Plaintiff argues
the use of the pronoun "this" refers to the previous sentence
which describes an increase to the accrued pension benefit as of
each March 31st in an amount lesser of 3% or the increase in the
CPI.  Since this description explains a future increase,
Plaintiff argues he had no notice that a COLA payment was not
included in the present value of his lump sum.  Consequently,
Plaintiff maintains that the Atofina plan did not clearly state
that a COLA payment was not part of Plaintiff's accrued benefit
nor did the Atofina plan clearly state that the present value of
the lump sum did not include a COLA payment and therefore the
statement of benefits cannot be considered a clear repudiation of

16

his claim.

Plaintiff similarly argues the language of the November 14, 2003 consent form is ambiguous and misleading.  The Plaintiff notes that the consent form states Plaintiff chose to receive his pension in a "single payment of the actuarial equivalent present value of the benefit that I would otherwise be entitled to receive in the form of monthly annuity payments." (Pikofsky Dec. Ex. 5.)  Plaintiff argues it is undisputed that he was entitled to receive COLAs if he took a monthly annuity.  Therefore, Plaintiff argues the consent form promises him the "actuarial equivalent present value" of his pension benefit, including COLAs.  Not only does this fall short of the clear repudiation standard, Plaintiff argues this was misleading and should result in equitably tolling Plaintiff's claim.

The Plaintiff argues that the consent form's reference to Article IV of the Plan is irrelevant to determining whether the Plan clearly repudiated his claim.  Plaintiff maintains that the Defendant did not provide him with a copy of Article IV of the Atofina Plan.  In addition, Plaintiff argues that the Plan does not state anywhere that the actuarial equivalent present value of COLAs is not included in the lump sums; rather, it only says participants who elect lump sums will not get future increases to their pension.  Therefore, Plaintiff maintains the consent form does not clearly repudiate his claim.

17

Plaintiff also argues that his claim could not have accrued when he signed the retirement benefits request form on November 23, 2004 because this form was simply an application for benefits and could not begin running the limitations period. Further, Plaintiff argues no election of benefits can occur until he submitted his application and Plaintiff argues there is no proof that he submitted his application prior to December 9, 2003. Therefore, Plaintiff's claim should be considered timely.

Finally, Plaintiff maintains that his claim did not accrue until the final denial of his administrative appeal. Plaintiff relies on the requirement to exhaust administrative remedies prior to filing suit and the well established rule that statutes of limitations are tolled during the ERISA administrative claims process. Paterson v. Metro. Life Ins. Co., 330 F. Supp. 2d 548, 551 (W.D. Pa. 2004). Therefore, Plaintiff contends his claim is timely.

The Defendant filed a reply brief and reiterated its argument that Plaintiff's complaint is barred by the statute of limitations. First, Defendant argues that the statute of limitations begins to run on clear repudiation, and a formal application for or denial of a benefit is not necessary. The Defendant maintains that the Third Circuit does not require the claims procedure to be completed before a claim can accrue and the statute of limitations begins to run. Miller v. Fortis

Benefits Insurance Co., 475 F.3d 516, 520-21 (3d Cir. 2007)(holding that no formal denial is needed for clear repudiation).  The Defendant further argues that there is no conflict between the exhaustion requirement and the statute of limitations because a participant may exhaust his administrative remedies after her claim accrues but within the limitations period and thus satisfy both requirements.

Second, Defendant maintains that the bold language in the statement of estimated benefits clearly indicated that lump sum recipients do not receive COLAs.  Defendant maintains that Plaintiff's signature on the early requirement request form on November 24, 2003 should be interpreted as evidence that Plaintiff had conducted reasonable due diligence and had read the documents provided with the benefit request.  Defendant relies on Miller, 475 F.3d at 522, wherein the Third Circuit explained that a participant must exercise reasonable diligence to ensure the accuracy of his award.

Defendant also argues that Plaintiff's interpretation of the bold language is unreasonable.  Defendant argues that a phrase is ambiguous if "it is subject to reasonable alternative interpretations."  Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001).  Defendant argues that while Plaintiff "suggests that the word 'this' refers only to the annual nature of the COLA and not to the COLA itself,

19

the reasonable reader would assume that the word 'this' refers to
the COLA itself and would understand that if he selected an
annuity, he would get an annual COLA, but that if he selected a
lump sum payment, he would not get any COLA at all." (Def.'s
Reply at 9.)

Defendant further supports this argument by referring to the
other information in the Statement, specifically, the table
including the monthly amounts and the lump sum payment.  This
table lists the monthly amounts and includes a row indicating the
lump sum amount that equates to the monthly amounts.  The monthly
amounts listed in the table do not include a COLA and the lump
sum figure does not include a COLA. (Rudd Ex. 2.)  The Defendant
argues that the figures included in this table put the contested
language below the table into context:

> The portion of your pension benefit attributable to your
> RandH accrued benefit will be increased as of each March
> 31st subsequent to the later of your retirement or
> attainment of age 60.  The amount of such increase will
> be the lesser of 3% or the increase in the CPI.  **You will
> not be entitled to this cost-of-living adjustment if you
> elect (with your spouse's written consent) to receive
> your RandH accrued benefit in the form of a lump sum.**

(Rudd Ex. 2.)

When this language is viewed in conjunction with the figures in
the table, the Defendant argues it is clear to a reasonable
reader that the monthly amounts in the table will be increased
annually by a COLA, but that a lump sum payment would not include
a COLA.

The Defendant also argues that the November 14, 2003 consent form further supports its clear repudiation argument.  The Defendant maintains that the consent form, when read in conjunction with the Plan Documents, 1994 SPD and the statement of estimated benefits, clearly discloses that a pension recipient will not receive a COLA if he elects to receive his benefit in a single lump sum payment.  The Defendant also contends that equitable tolling is not warranted here because the consent form does not mislead the Plaintiff and the Plaintiff has not presented extraordinary circumstances.  Kapp, 426 Fed. F. Appx. at 130.

The Defendant concludes its reply by stating that the Plaintiff did not exercise reasonable diligence as required under Third Circuit case law.  The Defendant maintains that the Plaintiff should not now be permitted to put forth unreasonable interpretations of the clear language in the 1994 SPD, statements of estimated benefits and consent form to avoid the statute of limitations.

> ## 2.  Accrual of Non-Fiduciary Claim for ERISA Benefits

It is well established that the accrual date of an ERISA non-fiduciary claim for benefits is determined as a matter of federal common law.  Romero, 404 F.3d at 221; Miller, 475 F.3d at 520.  Federal courts utilize the discovery rule to determine when a claim accrues for limitations purposes.  Romero, 404 F.3d at

222.  The discovery rule generally provides that "a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." Id.  With respect to ERISA claims, the discovery rule has become known as the clear repudiation rule.  Specifically, a non-fiduciary claim for benefits under ERISA accrues "when a claim for benefits has been denied."  Id.  However, "a *formal* denial is not required if there has already been a repudiation of the benefits by the fiduciary which was *clear* and made known to the beneficiary."  Miller, 475 F.3d at 520-21.  The Third Circuit has explained:

> the clear repudiation rule does not require a formal denial to trigger the statute of limitations. To the contrary, the rule includes other forms of repudiation when a beneficiary knows or should know he has a cause of action. As Romero clearly states, the clear repudiation rule avoids a myriad of ills that would accompany any rule that required the denial of a formal application for benefits before a claim accrues.

Id. at 521 (citations omitted).  In refusing to adopt a rule which required a formal denial of a claim for a claim to accrue, and instead holding that a claim accrues upon reasonable discovery, the Third Circuit reasoned:

> [S]tatutes of limitations are intended to encourage "rapid resolution of disputes, repose for defendants, and avoidance of litigation involving lost or distorted evidence." Romero, 404 F.3d at 223.  These aims are served when the accrual date anchors the limitations period to a plaintiff's reasonable discovery of actionable harm.  This ensures that evidence is preserved and claims are efficiently adjudicated.  In contrast, a statute of limitations not based on reasonable discovery

22

> is effectively no limitation at all.  Such would be the
> case if we held that Miller's cause of action accrued
> only upon Fortis's formal denial of his adjustment claim.
> Under this rule, a plaintiff could receive benefit checks
> for decades before deciding to investigate the accuracy
> of his award -- a plaintiff could thereby trigger the
> statute of limitations at his own discretion, creating an
> indefinite limitations period. We decline to invite such
> a result.

Id. at 522.  The Third Circuit requires a plan beneficiary to be

vigilant and failure to investigate an erroneous benefit

determination after receiving notice of a plan's calculation of

benefits will not toll the statute of limitations.  Id. at 523.

When a beneficiary receives an erroneous calculation of his

award, "the beneficiary should exercise reasonable diligence to

ensure the accuracy of his award."  Id. at 522.

In this case, Plaintiff's claim that his lump sum payment

should have included the present value of COLAs was clearly

repudiated by the Plan in the 1994 SPD, the subsequent statement

of estimated benefits from 2001 to 2003 and most importantly the

November 2003 consent form.

First, the Rohm & Haas 1994 SPD, which Plaintiff admits

receiving, clearly stated that an employee would not receive COLA

payments if he elected to receive his pension benefit in the form

of a lump sum.[5]

---

[5] Contrary to Plaintiff's representation in his brief that
the 1994 SPD mentions COLAs once, in fact, the 1994 SPD discusses
COLA payments three times and dedicates an entire section to
explaining the significance of COLA payments and how an employee
will forgo COLAs if they elect a lump sum distribution of their

This Plan's language, cited in the margin, is clear and is only susceptible to one reasonable interpretation:  If an employee elects to receive the Rohm & Haas pension in the form of a lump sum, the employee foregoes receiving COLAs.  This language

---

pension.
        The first reference to COLAs is mentioned in describing the optional forms of payment available to an employee.  Under "lump sum payment," the SPD explains, "Under this option, the entire present value of your lifetime pension benefit is paid to you in a single lump sum.  Neither you, nor anyone else will receive any further benefits from the Pension Plan, including cost-of living increases."  (Pikofsky Decl. Ex. 7 at ARK_00370.)  This language clearly and plainly notifies employees that they will not receive COLAs if they elect a lump sum.  Plaintiff's argument that this language means that COLAs are included as part of an employee's entire lifetime pension benefit is contrary to the plain language of the Plan.
        In addition, just two pages later, the Plan devotes an entire section of the SPD specifically to discussing COLAs.  The Plaintiff ignores this section entirely in his brief and does not address the clear repudiation of Plaintiff's claim contained in this language.  This section of the 1994 SPD is entitled "Cost-of-Living Adjustments."  First, the 1994 SPD defines "cost-of living adjustments" as "related to increases in the CPI as revised (the Urban Wage Earners and Clerical Workers Consumer Price Index.)  The maximum yearly adjustment is 3%."  (Pikofsky Decl. Ex. 7 at ARK_00372.)  This section goes further to explain when a participant will receive a COLA: "Increases take effect on March 31 of each year."  Id.  Finally, this section expressly discusses whether a participant will receive a COLA if he elects distribution in the form of a lump sum.  Specifically, in this section the Plan sets forth in following format:

        **LUMP-SUM PENSIONS**
        Cost-of-living increases apply only to monthly pension benefits.  They are not available if you take your pension in a lump sum.

(Pikofsky Decl. Ex. 7 at ARK_00372.)
Furthermore, in italic print, this section of the 1994 SPD states: "*You forego cost-of-living increases if you take a lump sum pension*."  Id.

refutes Plaintiff's claim that his lump sum pension benefit should have included the present value of cost-of-living increases.  The Plaintiff admits to receiving this document from Rohm & Haas in 1994.  Plan language negating Plaintiff's later claim is, at the least, a precursor of repudiation.[6]  It is not necessary to decide whether such Plan language can serve to repudiate an unasserted claim for benefits, because later communications to Mr. Dix do so.

This clear statement of the unavailability of COLAs to those who elect a lump-sum benefit was further reinforced by Atofina after it assumed the administration of the Rohm & Haas plan through the issuance of the "ATOFINA Early Retirement Incentive Program Statement of Estimated Benefits."  These statements were issued to the Plaintiff in 2001 and throughout 2003.  All of these statements included the same specially formatted language:

> The portion of your pension benefit attributable to your RandH accrued benefit will be increased as of each March 31st subsequent to the later of your retirement or attainment of age 60.  The amount of such increase will be the lesser of 3% or the increase in the CPI.  **You will not be entitled to this cost-of-living adjustment if you elect (with your spouse's written consent) to receive**

---

[6] The court's interpretation of the 1994 SPD is further supported by the recent decision from the Seventh Circuit, <u>Williams v. Rohm and Haas Pension Plan</u>, 497 F.3d 710 (7th Cir. 2007), where the Seventh Circuit held that the 1994 Rohm and Haas Plan, the same Plan at issue in this case, did not include COLAs in lump sum distributions and therefore violated ERISA.  In that case, the parties agreed and the court found that "the plain terms of the Plan exclude the COLA from a participant's accrued benefit." <u>Williams</u>, 497 F.3d at 712.

**your RandH accrued benefit in the form of a lump sum.**
(Pikofsky Decl. Exs. 1, 2, 3, 4 and 5 at 5)(hereinafter "Bolded Language").

There are a few important things to note about this Bolded Language.  First, it defines "cost-of-living adjustment" the same as the 1994 SPD.  In particular, it notes that COLAs are increases measured by the increase in the CPI with a maximum increase of 3%.  This Bolded Language also reiterates that COLAs will take effect on March 31st of each year.  Finally, this Bolded Language clearly indicates that COLAs are not available to participants who elect to receive their pension benefit in the form of a lump sum.

Plaintiff's argument -- that the word "this" preceding "cost-of-living adjustment" means that the Bolded Language does not clearly state that the lump sum does not include the present actuarial value of the COLAs -- is confusing and unpersuasive.  The plain reading of the Bolded Language unequivocally states that COLAs are not available to employees who receive their pensions in the form of a lump sum.  Moreover, when this Bolded Language is read in conjunction with the 1994 SPD, it echos the same description of the COLA, the same timing of the COLA and the same warning that lump sum recipients would forego any COLA increase.

Plaintiff's linguistic argument about the word "this" in the

26

Bolded Language is based on a false premise which assumes the existence of two types of COLAs under the Rohm and Haas Plan - a COLA applicable to annuities and a COLA applicable to lump sums. This premise is flawed because the 1994 SPD made clear that there was only one type of COLA and it was defined to apply only to annuities.  Lump sum payments were expressly excluded from the definition of "cost-of-living adjustments" under the Plan. Consequently, the word "this," does not create ambiguity in the Statements of Estimated Benefits, but rather reinforces that COLAs are only available to employees who receive their pension in the form of annuities.

Aside from the Bolded Language, these Statements of Estimated Benefits contained detailed calculations of Plaintiff's pension benefits under the Atofina Plan as well as Plaintiff's previous pension benefits under the Rohm and Haas Accrued Benefit, which Atofina was administering.  The amount of Plaintiff's Rohm & Haas Accrued Benefit was set forth in a table detailing the amount of 5-year, 10-year, 15-year, and 20-year certain and continuous annuities as compared to the amount of a lump sum.  The Bolded Language discussed above explaining the COLA is placed directly under this table.  The table was expressly entitled "Options for Your RandH Accrued Benefit." (Pikofsky Decl. Exs. 1, 2, 3, 4 and 5 at 5.)

It is clear from the monetary figures set forth in the table

that neither the annuity amounts or the lump sum amount contained COLAs.  The fact that COLAs were not contained in the table is reinforced by the Bolded Language directly below the table which indicated the monthly annuity amount in the table would be increased as of March 31st each year because of COLAs. Therefore, it was clear from the Plan and repeatedly made known to the Plaintiff that the lump sum amount of his pension benefit as represented in his Statement of Estimated Benefits, would not and did not contain a COLA payment.

The Plaintiff was notified of the actual final amount of his lump sum pension payment in November 2003, as evidenced by a letter from Defendant to Plaintiff dated November 10, 2003. (Pl.'s Ex. I.)  This letter confirmed that Plaintiff's lump sum payment of his pension plan was calculated as $505,495.00.  This figure corresponds with the figure on Plaintiff's October 23, 2003 Statement of Estimated Benefits ($505,494.67) and Plaintiff's November 7, 2003 Statement of Estimated Benefits ($505,494.67).  (Pikofsky Ex. 4; Rudd Ex. 2.)  Since the lump sum figure in the Statements of Estimated Benefits did not include a COLA, and Plaintiff's final calculated lump sum payment corresponded with the Statements of Estimated Benefits, Plaintiff was put on notice that the lump sum payment he would receive would not include a COLA.

The letter from the Defendant to Plaintiff dated November

28

10, 2003 is significant to the court's analysis.  This letter was sent to the Plaintiff to inform Plaintiff of "information pertinent to your retirement under the ATOFINA Chemicals, Inc. Early Retirement Incentive Program, effective January 1, 2004." (Pl.'s Ex. I at 1.)  First, this letter stated unequivocally that, "The lump sum value of your (Rohm and Haas) benefit is $505,495.00 for a payment date of January 1, 2004."  (Pl.'s Ex. I at 2.)  This letter also included several forms, including a statement showing various payment options and the spousal consent form signed by Plaintiff on November 14, 2003.[7]  Accordingly, since the Plaintiff signed and executed the spousal consent form as of November 14, 2003, the court can infer that Plaintiff had received this letter at the latest, on November 14, 2003, and was informed of his final calculated lump sum as of November 14, 2003.

Finally, this letter also provided Plaintiff with a direct phone number to a Plan representative should the Plaintiff have any questions regarding his retirement benefits.  (Pl.'s Ex. I at 5.)  There is no evidence that Plaintiff called or requested more information regarding the calculation of his lump sum benefit

---

[7] The letter indicates that the following items were attached: copy of Plaintiff's benefit calculations, statement showing various payment options, detailed instructions for election payment options, and forms you need to complete, dependent upon the payment option chosen.  (Pl.'s Ex. I at 1.) Plaintiff did not include any of the enclosures in his exhibit.

29

under the Rohm & Haas Plan.

As mentioned above, the Plaintiff signed the Spousal Consent Form required for receipt of his lump sum payment on November 14, 2003 before a notary.  This form was provided to the Plaintiff as an enclosure to the November 10, 2003 letter.[8]  This form states:

> I, Philip A. Dix (Participant), hereby consent, pursuant to Article IV of the ATOFINA Chemicals, Inc. Retirement Benefits Plan (the "Plan") to the Plan's distribution to me in a single payment of the actuarial equivalent present value of the benefit that I would otherwise be entitled to receive in the form of monthly annuity payments.  I understand that by choosing my benefit in the form of a single payment, the Plan will be fully discharged of its obligations to me and to my spouse, and I (we) will have no right or entitlement to any future benefits from the Plan.

(Pikofsky Decl., Ex. 5.)

This consent form further repudiates Plaintiff's claim that COLAs were included in a lump sum payment.  Plaintiff's argument that he interpreted the "actuarial equivalent present value of the benefit" to mean that COLAs were included in his lump sum payment is without merit because it ignores the consent form's incorporation of Article IV of the ATOFINA Plan.  Article IV of the ATOFINA Plan is entitled "Forms of Benefits" and immediately states:

---

[8] The letter indicates that the forms a participant must complete to elect a payment option were enclosed.  The letter then explains that the spousal consent form must be signed and notarized to elect a lump sum payment.  Four days after the date of the letter, the Plaintiff signed and notarized the spousal consent form.  Therefore, the court concludes that this form was included as an attachment to the November 10, 2003 letter.

> Set forth below are the general rules regarding the forms
> of retirement benefits available under the Plan.   The
> Appendices to the Plan contain special rules regarding
> the forms of benefits for Participants who were employed
> by companies that were acquired by or otherwise became
> affiliated with ATOFINA Chemicals, Inc.

(Rudd. Decl. Ex. 1 at 22.)   Appendix N governs Plaintiff's Rohm &

Haas benefit and states: Notwithstanding any other provisions of

the Plan, the following special rules apply to each Employee who

. . . was an employee of Rohm and Haas Company . . . and an

active participant in the Rohm and Haas Pension Plan. . . "

(Rudd. Decl. Ex. 1 at N1.)   This Appendix provides a special

section to address cost of living adjustments.   This section

states:

> The portion of an AtoHaas Employee's benefit attributable
> to his RandH Past Service Benefit shall be increased as
> of March 31st of each year subsequent to the later of
> such person's retirement or attainment of age 60. . . .
> The cost of living adjustments described above shall not
> apply, however, if the AtoHaas Employee (or, if
> applicable, the AtoHaas Employee's surviving spouse), has
> elected to receive benefits in the form of a single lump
> sum payment.

(Rudd. Decl. Ex. 1 at N3.)

     This language, like the language in the 1994 SPD and the

Bolded Language in the Statements of Estimated Benefits, clearly

repudiates Plaintiff's claim that he was entitled to a cost of

living adjustment when he received his lump sum pension payment.

This language clearly and unequivocally states that COLAs are not

applicable to participants who elect a lump sum distribution.

     Therefore, any interpretation of "actuarial equivalent

31

present value of the benefit" must be interpreted with reference
to Article IV of the ATOFINA plan.  Importantly, the section
entitled "Cost of Living Adjustments" quoted above is wholly
separate from the section explaining "Accrued Benefit" and
"Actuarial Equivalence for Lump Sum Payments."  Since neither the
"Accrued Benefit" section or the "Actuarial Equivalence for Lump
Sum Payments" section reference COLAs, and COLAs are addressed in
their own secion separate and distinct from both of these terms,
it is clear that the term "actuarial equivalent present value of
the benefit" does not refer in any way to COLAs and does not
include any COLA payment.

Plaintiff argues that he was not provided with a copy of the
Plan and therefore cannot be deemed to have knowledge of it.
This argument ignores the Plaintiff's responsibility to exercise
due diligence.  The Plaintiff does not allege that he was
prevented from requesting a copy of the Plan or that he requested
the plan documents and was refused.  Rather, Plaintiff presents
no evidence that he exercised any diligence whatsoever to
determine what Article IV of the Plan document contained and
consequently, blindly signed the consent form.  This is
insufficient to toll the statute of limitations, especially when
the Plan contained nothing inconsistent with the clear previous
advice that lump sum payments of benefits would not include
COLAs.

32

In addition, this consent form was sent to the Plaintiff with a detailed letter and direct contact information for a plan representative.  There is no evidence in the record that Plaintiff reached out to the plan representative or took any steps to learn what Article IV of the plan contained.  Under these circumstances, there is no basis for suggesting any misrepresentation on the part of the Defendant that might equitably save Plaintiff's claim from being barred by the statute of limitations.

Therefore, in summary, the court concludes that Plaintiff's claim for benefits accrued, at the latest, on November 14, 2003, when Plaintiff can be presumed to have received the November 10, 2003 letter which notified Plaintiff of the final calculation of his lump sum benefit.  By this time, the Plaintiff had received the 1994 Rohm & Haas SPD which clearly stated that a participant in the plan who elected to receive a pension as a lump sum distribution would forego cost-of-living increases.  The Plaintiff had also received multiple Statements of Estimated Benefits from 2001-2003 which included the same Bolded Language in each statement which echoed the language in the 1994 SPD and informed Plaintiff that COLAs did not apply if the Plaintiff elected a lump sum payment.  These statements also provided a table of figures calculating an annuity payment and lump sum payment, and none of these figures included COLAs in the

estimate.

In a letter dated November 10, 2003, the Plaintiff received the final calculation of his lump sum pension benefit which corresponded to the figure in his Statement of Estimated Benefits that did not include a COLA.  This letter provided the Plaintiff with, among other things, the Spousal Consent Form as well as direct contact information for a plan representative should the Plaintiff have any questions or concerns.

The Plaintiff signed the spousal consent form on November 14, 2003, electing the lump sum benefit.  This consent form incorporated by reference Article IV of the ATOFINA Plan.  The plan documents explained, in an Appendix to Article IV, that the Rohm & Haas plan did not provide COLAs for lump sum distributions.  The language in the Appendix echoed the language in the 1994 SPD and the multiple Statements of Estimated Benefits received by Plaintiff from 2001 to 2003.

There is no evidence in the record that Plaintiff exercised any diligence whatsoever in requesting plan documents or speaking to a representative about whether COLAs were included in the calculation of his lump sum benefit.  The Plan made clear repeatedly since 1994 that a participant would not receive a COLA if the participant elected to receive a lump sum benefit.  The Plaintiff's belated linguistic arguments are contrary to the plain wording of the Plan.

34

In addition, the court rejects Plaintiff's argument that his claim did not accrue until he actually received his lump sum payment in his IRA account on January 12, 2004.  The Defendant sent a check for $505,495.00 to Prudential/Wexford Clearing Services ("Prudential") for deposit in Plaintiff's IRA account on January 2, 2004 (Pl.'s Ex. C) which Prudential received on January 12, 2004.  The amount of the check, $505,495.00, is the identical amount Plaintiff was informed of in the November 10, 2003 letter.  The Plan clearly informed Plaintiff in the letter that "[t]he lump sum value of your (Rohm and Haas) benefit is $505,495.00 for a payment date of January 1, 2004."  (Pl.'s Ex. I at 2.)  This notification was clear and unequivocal and sufficient to put Plaintiff on notice that the amount of his lump sum payment did not include COLAs.  Consequently, Plaintiff's claim accrued, at the latest, when he was informed by the Plan of the final calculated lump sum payment, not when he formally received payment in the identical amount.

Similarly, the court rejects Plaintiff's argument that his claim did not accrue until he received the formal denial of his administrative claim on June 21, 2010.  As noted above, Third Circuit case law is clear that "a _formal_ denial is not required if there has already been a repudiation of the benefits by the fiduciary which was _clear_ and made known to the beneficiary." Miller, 475 F.3d at 520-21.  In this case, as discussed above, it

35

was clear and made known to the Plaintiff by November 14, 2003, at the latest, that his lump sum payment did not include COLAs.

Such a holding does not make Plaintiff a "watchdog" for potential plan errors or abuses.   Miller, 475 F.3d at 523. Rather, the November 10, 2003 letter was sufficient to inform the Plaintiff that the Plan determined his entitlement and this triggered Plaintiff's need to be vigilant.   Requiring Plaintiff to investigate his benefit determination within the six year limitations period "does not impose on him a burdensome oversight role."   Id.

The terms of the Plan were clear and were made known repeatedly to the Plaintiff from 1994 through 2003.   The Plaintiff received the final calculation of his lump sum payment in a letter dated November 10, 2003 which was received by the Plaintiff no later than November 14, 2003.   At the latest, Plaintiff's claim accrued on November 14, 2003.   Therefore, for the Plaintiff to have pursued his claim within the six year statute of limitations, he would have had to file his administrative claim with the Plan no later than November 14, 2009.   The Plaintiff did not file his administrative complaint until December 7, 2009.   Accordingly, Plaintiff's claim is barred by the statute of limitations.

The Defendant's motion for summary judgement will be granted.

36

**IV.   CONCLUSION**

For the reasons discussed above, the Defendant's motion for summary judgment will be granted.   The Plaintiff's complaint was filed beyond the six year limitations period and is therefore barred.   The accompanying Order will be entered.


**November 30, 2012**                           **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                Chief U.S. District Judge

37